USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/7/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM B. CORLEY,

                Plaintiff,

-v-

JOSEPH SPITZER and BRIAN LOFTMAN,

                Defendants.

No. 11–cv-9044 (RJS) (KNF)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiff William B. Corley, proceeding *pro se*, brings this action alleging illegal behavior by a variety of actors in connection with his rental of an apartment in The Aspen – a building owned by 100 Street Tri Venture LLC ("Tri Venture"), managed by Allstate Realty Associates ("Allstate"), and governed by a "Regulatory Agreement" between Tri Venture and the New York Housing Development Corporation ("HDC"). Now before the Court is Defendants'[1] motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 72.) On May 2, 2014, the Honorable Kevin Nathaniel Fox, Magistrate Judge, issued a "Report and Recommendation" ("Report" or "Rep.") recommending that: (1) Defendants' motion to dismiss be denied as (a) untimely and (b) moot; and (2) Defendants' default be entered, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, for failing to answer or defend against the operative pleading in a timely fashion. (Doc. No. 77 at 11.) For the reasons set forth below, the

---

[1] In the Court's February 10, 2014 Memorandum and Order, the Court dismissed Plaintiff's causes of action against the named Defendants who are employees of HDC (the "HDC Defendants"). (Doc. No. 66 ("February 10 Order").) Therefore, the only remaining Defendants are Joseph Spitzer of Tri Venture ("Spitzer") and Brian Loftman of Allstate ("Loftman").

Court respectfully disagrees with Magistrate Judge Fox's recommendations and, instead, grants the motion to dismiss.

## I. BACKGROUND[2]

Plaintiff filed the initial Complaint in this action on December 12, 2011. (Doc. No. 1.) The Complaint generally concerned Plaintiff's relationship with his landlord and his efforts to obtain a reduced-rent apartment. On April 23, 2012, the Court referred this matter to Magistrate Judge Fox for general pretrial matters, as well as a report and recommendation concerning any dispositive motions filed by the parties. (Doc. No. 10.) On April 27, 2012, the HDC Defendants filed a motion to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] (Doc. No. 13.) After the motion was fully briefed, on January 24, 2013, Magistrate Judge Fox issued a report, recommending that the claims against the HDC Defendants be dismissed, but that Plaintiff be permitted to make a formal motion for leave to amend the Complaint. (Doc. No. 42.) In an Order dated March 28, 2013, the Court adopted Magistrate Judge Fox's report in its entirety. (Doc. No. 48.) Following the resolution of logistical filing issues, Plaintiff eventually filed his motion, with a proposed Amended Complaint ("AC") attached, on May 24, 2013. (Doc. No. 56.) On June 5, 2013, the HDC Defendants filed their opposition to Plaintiff's motion for leave to amend his complaint; however, Defendants did not file any opposition to Plaintiff's motion. (Doc. No. 58.)

---

[2] The facts underlying this dispute were thoroughly discussed in the Court's March 28, 2013 Memorandum and Order (Doc. No. 48 ("March 28 Order")), and the Court uses certain terms throughout this Opinion and Order as defined in the March 28 Order. In deciding the instant motion, the Court considered Defendants' memorandum of law in support of the motion (Doc. No. 74 ("Mem.")), Plaintiff's brief in opposition to the motion (Doc. No. 75 ("Opp'n")), Defendants' objections ("Defs. Obj."), and Plaintiff's responses to those objections (Doc. Nos. 81, 82, 84), as well as the affirmations and exhibits accompanying these submissions.

[3] Defendants each filed an Answer on May 4, 2012. (Doc. Nos. 22, 23.) Plaintiff made a motion to strike the Answers of Defendants (Doc. No. 20), which the Court, upon the recommendation of Magistrate Judge Fox, denied. (Doc. No. 41).

On August 20, 2013, Magistrate Judge Fox issued his report concerning Plaintiff's motion for leave to amend his complaint, recommending that the Court dismiss three of the causes of action for failure to state a claim pursuant to Rule 12(b)(6) and permit Plaintiff to file an amended pleading as to the other causes of action. (Doc. No. 59.) Following receipt of the HDC Defendants' objections and Plaintiffs' response to those objections, the Court denied, in part, and granted, in part, Plaintiff's motion for leave to amend the complaint: (a) leaving only "causes of action against . . . Defendants in the proposed Amended Complaint, to which there has been no opposition"; (b) ordering that the "Plaintiff's proposed Amended Complaint (Doc. No. 56) shall be treated as the operative pleading in this action"; and (c) directing Defendants "to file an answer on or before February 28, 2014." (February 10 Order.)

On February 27, 2014, Defendants requested an extension of "time to answer or move against the Amended Complaint" (Doc. No. 67), which the Court denied by ordering the parties to "direct such scheduling matters" to Magistrate Judge Fox (Doc. No. 68). On February 28, 2014, Magistrate Judge Fox granted Defendants' request for an extension and directed Defendants to "answer or move with respect to the amended complaint on or before March 7, 2014." (Doc. No. 70.) On March 7, 2014, Defendants improperly filed their motion to dismiss the amended complaint, and the ECF system generated the following message: "FILING ERROR - DEFICIENT DOCKET ENTRY." (Doc. No. 71.) On March 10, 2014, ECF generated a "Note to Attorney Dean Dreiblatt" to refile the motion to dismiss due to the error. (*Id.*) Defendants then filed the instant motion to dismiss on March 11, 2014. (Doc. No. 72.)

On May 2, 2014, Magistrate Judge Fox issued his Report and Recommendation concerning Defendants' motion to dismiss. (Doc. No. 77.) On May 30, 2014, Defendants filed their objections ("Obj.") to the Report, arguing that Magistrate Judge Fox erred in recommending denial of the motion to dismiss and an entry of default against Defendants. (Doc. No. 80.) Plaintiff responded

3

to those objections, in essence, urging the Court to adopt Magistrate Judge Fox's recommendations to deny the instant motion and enter Defendants' default. (Doc. Nos. 81, 82, 84.)

## II. LEGAL STANDARD

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* Fed. R. Civ. P. 72(b) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a magistrate judge's report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous or contrary to law. *See Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). A magistrate judge's decision is "clearly erroneous" only if the district court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

To the extent that a party raises specific objections to a magistrate judge's findings, the Court must undertake de novo review of such objections. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). However, where a party's objections to a report and recommendation are "conclusory or general," or "simply reiterate[] [the party's] original arguments," the report should be reviewed only for clear error. *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (quoting *Barratt v. Joie,* No. 96-cv-0324 (LTS) (THK), 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); *accord Cartagena v. Connelly*, No. 06-cv-2047 (LTS) (GWG), 2008 WL 2169659, at *1 (S.D.N.Y. May 23, 2008).

4

## III. DISCUSSION

As noted above, Magistrate Judge Fox recommends denial of the instant motion, as well as the entry of Defendants' default, based upon Defendants' (1) failure to successfully file the motion on March 7, 2014 (Rep. at 6–8), and (2) deficient papers filed in support of the motion (Rep. at 8–11). In light of Defendants' objections to the Report, the Court must undertake *de novo* review of those recommendations. As explained below, the Court respectfully disagrees with Magistrate Judge Fox's recommendations and, instead, resolves Defendants' motion to dismiss on the merits.

### A. The Report's Recommendations

Magistrate Judge Fox recommended denial of the motion to dismiss and the entry of a default based on a number of procedural missteps by Defendants. Specifically, the Report recommended that the Court: (1) deny Defendants' motion to dismiss as (a) untimely and (b) moot; and (2) enter Defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure for failing to answer or defend against the operative pleading in a timely fashion. (Rep. at 11.)

With respect to timeliness, the Report concluded that the instant motion to dismiss was untimely because it was "filed without authorization on March 11, 2014" – four days after it was required to be filed on March 7, 2014 – and therefore should be denied. (Rep. at 8.) The Court respectfully disagrees. Magistrate Judge Fox's February 28, 2014 Order directed Defendants to "answer or move with respect to the amended complaint on or before March 7, 2014." (Doc. No. 70.) However, Defendants' filing on March 7, 2014 prompted the ECF system to generate the following message: "FILING ERROR – DEFICIENT DOCKET ENTRY." (Doc. No. 71.) Notwithstanding that error message, a Notice of Electronic Filing ("NEF") was generated by ECF on March 7, 2014. As noted above, after the ECF system generated a note on March 10, 2014,

5

directing counsel to refile the motion, Defendants successfully filed their motion the next day, on March 11, 2014. (Doc. No. 72.) Courts in the Southern District of New York routinely decline to consider motions to be untimely based on a failed ECF filing, particularly where a NEF was generated upon an original, timely filing. *See, e.g., Kubicek v. Westchester Cnty.*, No. 08-cv-372 (ER), 2014 WL 4898479, at *4 (S.D.N.Y. Sept. 30, 2014); *Rhodes v. Davis*, No. 08-cv-9681 (GBD), 2012 WL 414329, at *1 (S.D.N.Y. Feb. 9, 2012). Consistent with that practice, and notwithstanding the ECF system's error message generated on March 7, 2014, the Court will consider Defendants' motion to dismiss to have been timely filed and will resolve the motion on the merits. Consequently, the Court also rejects the Report's recommendation that a default be entered as a result of Defendants' inability to successfully file on March 7, 2014.

The Court likewise rejects the Report's recommendation that the instant motion to dismiss should be denied on the ground of mootness. (*See* Rep. at 8–11.) First, the Court respectfully disagrees with the Report's characterization of the Court's February 10 Order as prohibiting Defendants from filing a motion to dismiss instead of answering the Amended Complaint. (*See* Rep. at 9–11.) The Court's directive – that Defendants were "required to file an answer on or before February 28, 2014" (February 10 Order at 14) – did not foreclose the option for Defendants to move in lieu of answering, which the Federal Rules of Civil Procedure expressly permit. *See* Fed. R. Civ. P. 12(a)(4). Nor, in fact, did the Court ever intend to preclude the possibility of Defendants filing a motion to dismiss. Moreover, Magistrate Judge Fox's own order authorized Defendants to "answer or move with respect to the Amended Complaint on or before March 7, 2014." (Doc. No. 70.) Surely the time to address the ambiguities of the Court's February 10 Order was before granting Defendants' request for an extension of the time by which they were to answer or move. And although the Report suggests that the decision to grant the extension request was premised on Defendants' "disingenuous" characterization of the Court's February 10 Order (*see*

6

Rep. at 9–10), the fact remains that the February 10 Order was already docketed and available for review, making reliance on the parties' representations about its contents unnecessary. In any event, to the extent the Court's February 10 Order was unclear, the resulting confusion was attributable to the Court's imprecision, and should not be held against Defendants after they filed their motion and supporting brief.

Second, although the Report noted certain deficiencies in Defendants' moving papers, including Defendants' references to the incorrect version of the Amended Complaint (*see* Rep. at 8–9, 11) and failure to comply with the requirements of 28 U.S.C. § 1746 in filing declarations (*see* Rep. at 8), the Court finds that these deficiencies are immaterial to the Court's ultimate resolution of the issues implicated in the instant motion. Accordingly, the Court declines to adopt the Report's recommendation that Defendants' motion to dismiss be denied on these procedural grounds.

## B. The Merits of the Motion to Dismiss

Turning to the merits of the motion to dismiss, Defendants seek to dismiss all of Plaintiff's remaining claims in the Amended Complaint. Specifically, as a result of the Court's February 10 Order dismissing all claims against the HDC Defendants, five claims against Defendants remain: (1) racial discrimination under the Fair Housing Act ("FHA"); (2) fraud; (3) negligence/breach of contract; (4) extortion/intentional infliction of emotional distress; and (5) civil conspiracy. The Court will address each claim in turn.

1. Racial Discrimination under the FHA[4]

The FHA broadly prohibits racial discrimination in the sale or rental of housing. *See* 42 U.S.C. § 3604. In his FHA racial discrimination claim (AC ¶¶ 456–64), Plaintiff generally alleges that he "should have been provided an application and an apartment or placed on a waiting list" when he inquired about the availability of low-income units (AC ¶ 457), but due to "racial animus," Loftman refused to process Plaintiff's application for a reduced-rent apartment (AC ¶¶ 461–62). The Court previously dismissed this claim against the HDC Defendants in the February 10 Order because of Plaintiff's failure to "allege any discriminatory act on the part of the HDC Defendants." (February 10 Order at 4.) Because Defendants had not joined the HDC Defendants' motion, the Court had no opportunity to pass on the merits of the FHA racial discrimination claim against Defendants. Now, however, Defendants seek to dismiss this claim on the basis of collateral estoppel, or issue preclusion, arguing that the decisions of a state court concerning an issue relevant to Plaintiff's FHA racial discrimination claim is entitled to preclusive effect and dictates dismissal of the claim here. In the Court's March 28 Order, the Court described that state action as follows:

> Plaintiff brought a lawsuit against Tri Venture and Allstate in state court on January 7, 2010. Plaintiff's action in the Supreme Court of New York ("State Court") against Allstate and Tri Venture (*Corley v. Allstate Reality Associates and 100 Street Tri Venture, LLC*, Case No. 400026/10) alleged nine causes of action, including discrimination based on age and disability. On September 21, 2010, the State Court dismissed Plaintiff's complaint, noting that The Aspen had a policy of not renting to potential tenants "with outstanding civil judgments, prior criminal convictions, or multiple delinquent accounts." Because the housing discrimination statute requires a plaintiff to demonstrate that he is "otherwise qualified" to rent or purchase the housing at issue, and Plaintiff was not otherwise qualified when he applied due to a prior criminal conviction, the State Court found that he failed to

---

[4] The Amended Complaint includes four paragraphs beneath the heading "Civil rights claim that defendants did not follow." (*See* AC ¶ 465-68.) That heading and the associated paragraphs immediately follow Plaintiff's claim for racial discrimination under the FHA, and, in the summary paragraph of the Amended Complaint describing Plaintiff's various claims, Plaintiff does not list any civil rights claim separate and apart from his FHA claim. (*See* AC ¶ 545 ("[P]laintiff respectfully urges he has demonstrated the following claims of fraud (two counts), violation of civil rights (*Mitchell v. Shane*), . . . negligence, and civil conspiracy.).) Therefore, the Court construes paragraphs 465 through 468 of the Amended Complaint to be part of Plaintiff's FHA racial discrimination claim.

8

state a claim for discrimination. Plaintiff thereafter made a motion to revive the dismissed action by amending his complaint, which was denied.

(March 28 Order at 5 (citations and footnote omitted).)

Collateral estoppel "bars relitigation of a specific legal or factual issue in a second proceeding." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001). New York's collateral estoppel law differs slightly from federal collateral estoppel law, but in order "[t]o accord full faith and credit to a given state-court judgment, the [federal] court must at least apply that state's principles of res judicata and collateral estoppel . . . ." *Town of Deerfield v. FCC*, 992 F.2d 420, 429 (2d Cir. 1993). The Second Circuit has noted that, under New York law, collateral estoppel "may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate." *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (citation omitted). Additionally, the issue previously raised "must be decisive of the present action" in order for collateral estoppel to apply. *Id.* (citation omitted); *see also id.* at 332 ("[A]n issue is 'decisive in the present action' if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint.").

All of the elements of collateral estoppel are met here. In the State Court action, the New York court dismissed Plaintiff's housing discrimination claim, noting that in order "to state a claim under a housing discrimination statute, plaintiff must demonstrate he is 'otherwise qualified' to rent or purchase the housing at issue." *Corley v. Allstate Reality Associates & 100 Street Tri Venture, LLC*, Case No. 400026/10, 2010 N.Y. Misc. LEXIS 4726, at *13–14 (N.Y. Sup. Ct. Sept. 30, 2010) (quoting *Soules v. U.S. Dep't of Hous. & Urban Dev.*, 967 F.2d 817, 822 (2d Cir 2009)). Working within the framework, the New York court found that "as plaintiff does not qualify for a subsidized apartment based on his credit history, criminal record and income level, he cannot state a claim for discrimination." *Id.* at *14. That finding resolved a contested issue that is "decisive in the present action," where Plaintiff must demonstrate that he is qualified to rent a low-income unit

9

at The Aspen. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (listing elements of FHA discrimination claim, including requirement that plaintiffs show they "were qualified to rent or purchase the housing"). Plaintiff has not met his burden of showing – or even suggested – that he was not afforded a full and fair opportunity to litigate the issue, which was resolved in the State Court action following briefing and oral argument. *See, e.g.*, *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 143–44 (S.D.N.Y. 2003) ("[O]pponent of preclusion has the burden of proving the absence of a full and fair opportunity to litigate the issue in the prior proceeding." (citations omitted)). Moreover, Plaintiff was later represented by counsel in the State Court action but was nonetheless unsuccessful in rearguing the dismissal of the discrimination claim. *See Corley v. Allstate Reality Associates & 100 Street Tri Venture, LLC*, Case No. 400026/10, 2011 WL 1549061, at *1–2 (N.Y. Sup. Ct. Mar. 16, 2011). The Court therefore finds that the State Court's finding that Plaintiff was not qualified to rent the low-income unit he sought at The Aspen is entitled to preclusive effect. Consequently, the Court will dismiss Plaintiff's discrimination claim.

2. Fraud

Plaintiff alleges that Defendants committed fraud, or constructive fraud, by (1) misleading Plaintiff about the availability of low-income apartments at The Aspen, and (2) refusing to process Plaintiff's application for a rental in 2009. (*See* AC ¶¶ 284–86, 469–81.) Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff[,] and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 883 N.Y.S.2d 147, 150 (N.Y. 2009). The elements of constructive fraud mirror those of fraud; however, the "knowledge of falsity" element of fraud "is replaced by a requirement that the plaintiff prove the existence of a fiduciary or confidential relationship warranting the trusting party to repose his confidence in the defendant

10

and therefore to relax the care and vigilance he would ordinarily exercise in the circumstances." *LBBW Luxemburg S.A. v. Wells Fargo Securities LLC*, 10 F. Supp. 3d 504, 524 (S.D.N.Y. 2014) (citation omitted). Significantly, the Federal Rules of Civil Procedure require that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Second Circuit "has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).

Here, because the Amended Complaint contains no allegation that Spitzer made any materially false misrepresentations of fact, the Court will dismiss Plaintiff's fraud claim against Defendant Spitzer. With respect to Loftman, Plaintiff asserts that Loftman committed fraud on two separate occasions. First, Plaintiff contends that in connection with his inquiry regarding the availability of low-income units in The Aspen, Loftman falsely asserted that he had been unable to secure a low-income unit for a relative of former Congressman Adam Clayton Powell, implying that Plaintiff should abandon his pursuit of a low-income unit because even relatives of powerful political figures had been unsuccessful in their efforts. (*See* AC ¶¶ 284–86, 469–76.) Plaintiff alleges that Loftman knew that the statement was false and intended the statement to induce Plaintiff to believe that any attempt to secure a low-income unit was futile. (AC ¶¶ 286, 471.) Plaintiff further alleges that he did, in fact, abandon his pursuit of a low-income unit in reliance on the statement and, as a result, suffered damages. (AC ¶¶ 472–73.) As noted above, however, the issue of Plaintiff's qualification to rent a low-income unit at The Aspen was already resolved in the State Court action and is entitled to preclusive effect. Specifically, the State Court found as

follows:

> [E]ven assuming *arguendo* that [Plaintiff's] fraud claim sufficiently alleges reasonable reliance on the purported misrepresentation regarding the unavailability of low income apartments, the documentary evidence submitted on this motion establishes that [Plaintiff] was not eligible for a low income apartment in 2005, so that it cannot be said that [Plaintiff] relied on the misrepresentation to his detriment.

*Corley v. Allstate Reality Associates & 100 Street Tri Venture, LLC*, Case No. 400026/10, 2011 WL 1549061, at *3 (N.Y. Sup. Ct. 2011) (emphasis in original). That finding concerning Plaintiff's qualification to rent a low-income unit is entitled to preclusive effect. Consequently, Plaintiff cannot demonstrate detrimental reliance on Loftman's 2005 statement, and the Court will dismiss Plaintiff's fraud claim related to that statement.

The second set of facts that Plaintiff alleges constitutes fraud appears to concern events that took place in 2009, which the State Court did not directly address. Specifically, Plaintiff ambiguously asserts that, in 2009, Loftman "refused to process Plaintiff's application [for a low-income unit] on the basis of information he knew was erroneous." (AC ¶ 478.) Plaintiff's vague assertions, however, fail to set forth with particularity – as required by Rule 9(b), *see Rombach*, 355 F.3d at 170 – facts that, if proven, would satisfy the elements for fraud or constructive fraud under New York law. As a result, the Court also dismisses that part of Plaintiff's fraud/constructive fraud claim relating to Plaintiff's apparent pursuit of a low-income unit at The Aspen in 2009.

### 3. Negligence/Breach of Contract

In the February 10 Order, the Court construed the claim asserted in paragraphs 482–505 of the Amended Complaint as "a claim for breach of contract rather than for negligence." (February 10 Order at 6.) In so doing, the Court rejected Plaintiff's attempt to characterize himself as a third-party beneficiary, noting that he had "failed to plead a plausible third-party beneficiary claim against the HDC Defendants." (*Id.*) Specifically, the Court found that "any right that Plaintiff

12

might have as a third-party beneficiary to enforce the terms of the Regulatory Agreement is limited to a very narrow set of claims, [and that] the claims asserted in the Amended Complaint fall outside this scope." (*Id.* at 8.) So too here. Because the Amended Complaint fails to state a claim against Defendants for breach of contract, that claim must be dismissed.[5]

4. Extortion/Intentional Infliction of Emotional Distress

Plaintiff purports to bring a claim for extortion and intentional infliction of emotional distress ("IIED"). (AC ¶¶ 556–71.) First, with respect to extortion, under New York law, "such claim is patently frivolous as extortion is a criminal offense, *see* N.Y. Penal Law § 155.05(2)(e), and may not be pled as a separate cause of action in a civil case." *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 401 (E.D.N.Y. 2013) (citing *Crandall v. Bernard, Overton & Russell*, 520 N.Y.S.2d 237, 238 (App. Div. 3d Dep't 1987)); *see also Minnelli v. Soumayah*, 839 N.Y.S.2d 717, 728 (App. Div. 1st Dep't 2007) ("The first cause of action for extortion and attempted extortion . . . was properly dismissed on the ground that extortion and attempted extortion are criminal offenses that do not imply a private right of action." (citations omitted)). Therefore, insofar as Plaintiff purports to bring a claim for extortion, that claim is dismissed.

Second, with respect to the IIED claim, under New York law, a plaintiff claiming intentional infliction of emotional distress must show: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 596 N.Y.S.2d 350, 353 (N.Y. 1993). With respect to the first element, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in

---

[5] Even if the Court were to construe this claim as a common law negligence claim, the Court would nonetheless dismiss it because Plaintiff has failed to identify any legal duty owed to him by Defendants. (*See* February 10 Order at 8 n.5 ("Plaintiff is not a party to the Regulatory Agreement, which does not create any legal duties owed by HDC to tenants; and to the extent that the third-party beneficiary clause creates some legal duty, it is only a very narrow one concerning circumstances irrelevant to the claims Plaintiff seeks to bring.").)

13

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations omitted); *see also id.* ("[O]f the intentional infliction of emotional distress claims [in cases] considered by [the New York Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous." (citations omitted)). Here, Plaintiff has not alleged that Defendants engaged in "extreme or outrageous conduct" toward Plaintiff rising to the level that would satisfy the high bar set by New York courts. *See, e.g.*, *Mitchell v. Giambruno*, 826 N.Y.S.2d 788, 789–90 (App. Div. 3d Dep't 2006) (finding sufficient evidence to support IIED claim where defendants "conducted what can only be characterized as a relentless campaign of lewd comments and intimidation directed at plaintiffs and their lifestyle, both in private and in public[, including creating] fear in plaintiffs that the graves [constructed by defendants] were intended for them"); *Cavallaro v. Pozzi*, 814 N.Y.S.2d 462, 465–66 (App. Div. 1st Dep't 2006) ("[P]laintiff stated in his affidavit . . . that defendant engaged in a constant campaign of harassment and intimidation, which included threatening to kill plaintiff and his children, and thus we conclude that plaintiff raised a triable issue of fact whether defendant's conduct rose to the requisite level of outrageousness . . . ." (citations omitted)). Nor are there adequate allegations of Plaintiff having suffered severe emotional distress to support an intentional infliction of emotional distress claim. *See, e.g.*, *Klinge v. Ithaca Coll.*, 652 N.Y.S.2d 377, 379 (App. Div. 3d Dep't 1997) (rejecting plaintiff's "bald assertions[] of emotional distress" and dismissing IIED claim because "complaint fails to sufficiently set forth facts necessary to support" it). Thus, the Court has little difficulty dismissing Plaintiff's IIED claim.

5. Civil Conspiracy

In the February 10 Order, the Court construed Plaintiff's claim (*see* AC ¶¶ 572–77), as one arising under 24 U.S.C. § 1985(3), and dismissed the claim against the HDC Defendants.

(February 10 Order at 5.) The Court noted that:

> The crux of Plaintiff's conspiracy claim seems to be that all Defendants in this case "worked hand-in-glove to deprive Plaintiff of his civil rights, to keep hidden the fraud and constructive fraud of individual defendants, and to cause Plaintiff emotional distress." (AC ¶ 576.) Plaintiff makes a similarly conclusory allegation that "[t]he HDC defendants colluded with, conspired with, and were actively engaged in the deprivation of [P]laintiff's Constitutional rights jointly with Defendants Spitzer and Loftman." (*Id.* ¶ 573.)

(February 10 Order at 6.) Once again, the Court finds that the Amended Complaint is devoid of any non-conclusory allegations regarding the existence of an agreement or conspiracy motivated by racial animus and involving Defendants. Consequently, Plaintiff's civil conspiracy claim must be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendants' motion to dismiss in its entirety. Accordingly, the Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 72 and close this case.

SO ORDERED.

Dated:   January 7, 2015
         New York, New York

                                                    _____
                                                    RICHARD J. SULLIVAN
                                                    UNITED STATES DISTRICT JUDGE